[No. D011121. Fourth Dist., Div. One. Apr. 10, 1991.]

NORTHWEST FINANCIAL, INC., Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION et al., Defendants and Respondents.

## COUNSEL

Shannahan, Smith, Scalone & Stipanov, Shannahan, Smith & Stipanov and Robert K. Smith for Plaintiff and Appellant.

William K. Rentz, Ajalat & Polley, Charles R. Ajalat, Terry L. Polley, Richard J. Ayoob, Hall & Phillips, Carlyle W. Hall, Jr., Mary Louise Cohen and Ann E. Carlson as Amici Curiae on behalf of Plaintiff and Appellant,.

John K. Van de Kamp, Attorney General, Arthur C. DeGoede, Assistant Attorney General, Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley and Leonard W. Pollard II, Deputy County Counsel, for Defendants and Respondents.

Ronald A. Zumbrun, Anthony T. Caso, Jonathan M. Coupal and Trevor A. Grimm as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**WORK, J.**—Northwest Financial, Inc., a Nevada corporation, appeals a judgment sustaining a demurrer in favor of the State Board of Equalization and San Diego County. Northwest Financial's complaint revisits equal protection and right to travel constitutional challenges to the real property "acquisition value" taxation system established by Proposition 13, which were rejected by our Supreme Court in *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281]. *Amador*'s constitutionality analysis anticipated the disparities between property taxes imposed on comparable properties which would arise from the passage of time and an inflationary real estate market, which disparity forms the basis of Northwest Financial's current complaint.

*Amador* has not been undermined by the United States Supreme Court's decision in *Allegheny Pittsburgh Coal* v. *Webster County* (1989) 488 U.S. 336 [102 L.Ed.2d 688, 109 S.Ct. 633]. *Allegheny*'s holding of an equal protection violation arising from one county tax assessor's aberrational use of a similar acquisition value system, is expressly premised on the fact no rationally based state classification system had been established to support the method. In contrast, as elucidated in *Amador*, Proposition 13 classifies taxpayers according to the acquisition value of their real property, thereby tying taxes to the cost of property when purchased. The classifications in the acquisition value system (as opposed to the former current value system) serve the rational purpose of protecting real property owners from increased taxes based on increased property values in an inflationary real estate market, thereby satisfying equal protection requirements.

The demurrer was properly sustained and the judgment is affirmed.

## EQUAL PROTECTION

 Northwest Financial argues it has set forth an equal protection cause of action based on the alleged gross tax disparity between comparable properties which has arisen from the implementation of Proposition 13 for 12 years, and that equal protection requires roughly comparable taxation between persons within the same classification.[1] As we explain, Northwest Financial's argument ignores the fact that taxpayers owning comparable properties who are taxed differently have been placed in separate

---

[1] Northwest Financial alleges its tax base on its real property is four times greater than that of the previous owner. Northwest Financial's property, purchased in 1987, was assessed for property tax purposes at its purchase price of $730,000, whereas the tax base of the previous owner was $175,839.

classifications. As made clear in *Amador*, Proposition 13 places taxpayers into different classes based on when they purchased their property, in order to effectuate the rational goal of tying taxes to the value of property when it was purchased rather than to the increasing value of property as the years go by. Thus, neighbors who own properties of comparable values, but who are classified differently based on value at the time of purchase, need not be taxed uniformly since the classification has a rational basis related to a legitimate state purpose. In short, no equal protection violation has been shown since the alleged disparity arises from a rationally based classification system, rather than from different treatment of those within the same classification.

The challenged provision of Proposition 13, enacted in 1978, provides that property purchased in 1975 or before will be taxed based on the 1975-1976 tax bill appraisement, whereas property purchased after 1975 will be taxed based on the appraised value at the time of purchase.[2] *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra*, 22 Cal.3d at pages 235-236, characterizes the new system as an "acquisition value" approach to taxation rather than a "current value" approach. That is, instead of assessing the taxable base premised on the current value of the property in any given year, the taxable base is fixed at the appraised value at the time of purchase (plus a 2 percent annual increase for inflation).

The equal protection challenge in *Amador* included a contention that the "rollback" of assessed valuation would result in invidious discrimination between owners of similarly situated property. (22 Cal.3d at p. 232.) The petitioners in *Amador* argued the rollback of assessed value to the 1975-1976 fiscal year would result in two substantially identical homes, located side-by-side and receiving identical government services, to be assessed and taxed at different levels depending upon their date of acquisition. (*Id.* at p. 233.)[3]

Our Supreme Court first noted that the equal protection argument was arguably premature, and the court could decline to consider the issue in the

---

[2] California Constitution, article XIII A, section 2, subdivision (a) states: "The full cash value [to which the 1 percent maximum tax applies] means the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereafter, the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment. All real property not already assessed up to the 1975-76 full cash value may be reassessed to reflect that valuation."

[3] The rollback feature of Proposition 13 arose from the fact that persons who purchased their property before 1975 would have their taxable base rolled back from the current value to the 1975 value, whereas persons who purchased after 1975 would have a taxable base premised on the value at the time they made the purchase. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra*, 22 Cal.3d at p. 236.)

abstract and instead await an actual controversy wherein the disparity was pivotal. However, in the interests of advising the assessors whether to follow the new assessment procedure, the court chose to treat the equal protection issue as a facial attack, and concluded equal protection was satisfied by a rational basis underlying the constitutional provision.

■ *Amador* cites the general principle that a challenge to a classification in state tax law will not prevail even if it discriminates in favor of a certain class, as long as the discrimination is founded upon a reasonable distinction or difference in state policy not in conflict with the federal Constitution. (22 Cal.3d at p. 234.) So long as the taxation system is supported by a rational basis, and is not palpably arbitrary, it will be upheld even in the absence of precise, scientific uniformity of taxation. (*Ibid.*) In upholding the new assessment procedure, the court in *Amador* rejected the petitioners' citation to a line of cases which hold the intentional, systematic undervaluation of property similarly situated with other property assessed at full value, constitutes an improper discrimination in violation of equal protection. *Amador* distinguishes those cases on the basis that they involved taxation systems which mandated taxation on a current value basis, but they did not state an exception to the general rule that a tax classification or disparity of tax treatment will be sustained as long as it is founded upon some reasonable distinction or rational basis. (*Id.* at pp. 234-235.)

*Amador* proceeds to evaluate the taxation system established by Proposition 13—i.e., except for property acquired before 1975, all real property will be taxed at its value at date of acquisition rather than at current value. (22 Cal.3d at p. 235.) *Amador* holds this "acquisition value" system was reasonable in that the annual taxes of a property owner would bear a rational relationship to the original cost of the property, rather than relate to an unforeseen, perhaps unduly inflated, current value. Each property owner would be able to estimate his future tax liability, and the system might operate on a fairer basis than the current value approach. To illustrate, *Amador* states a taxpayer who paid $40,000 in 1975 for his property would be taxed on the basis of that cost, leading to the fair result that his future taxes would reasonably reflect the price he was originally willing and able to pay for his property rather than an inflated value fixed, after acquisition, in part on the basis of sales to third parties over which he could exercise no control. A person who paid $80,000 for similar property in 1977 would be taxed at a higher level which reflected the price he was willing and able to pay for that property. (*Ibid.*) *Amador* rejects the petitioners' argument that the provision unduly discriminated against persons who acquired their property after 1975, since those persons would be assessed and taxed in precisely the same manner as those who purchased in 1975, i.e., on an

acquisition value basis predicated on the owner's free and voluntary act of purchase, which was an arguably reasonable basis for assessment. (*Ibid.*)[4]

Regarding the rollback feature which set the valuation of property acquired before 1975 at 1975 levels, the court reasoned that although the selection of a 1975-1976 base year may seem arbitrary, the adoption of a uniform acquisition value system without some cutoff date might have been administratively unfeasible and incapable of producing adequate tax revenues. The base year could be considered comparable to a "grandfather" clause wherein a particular year is chosen as the effective date of new legislation, in order to prevent inequitable results or promote some other legitimate purpose. (22 Cal.3d at p. 236.)

The court in *Amador* rejected the petitioners' argument that property of equal current value had to be taxed equally, regardless of its original cost. (22 Cal.3d at p. 236.) The court reasoned that a system whereby the owner's tax liability bore a reasonable relation to his costs of acquisition, was not wholly arbitrary or irrational, thereby meeting the demands of equal protection. (*Id.* at p. 237.)

 We see no difference between the arguments resolved in *Amador* and those now presented on this appeal. *Amador* holds there is no violation of equal protection from an "acquisition value" taxation scheme which classifies taxpayers according to the value of their property at purchase. The classification relates to the reasonable purpose of limiting tax burdens arising from increases in the value of property in an inflationary real estate market. Contrary to Northwest Financial's suggestion, the *Amador* opinion does not confine its analysis to the different treatment of taxpayers assessed at the 1975-1976 base level (i.e., the "rollback" class), but rather extends it broadly to the different treatment among all taxpayers subject to the post-1975 acquisition value taxation system.

Northwest Financial's citation to *Allegheny Pittsburgh Coal* v. *Webster County, supra*, 488 U.S. 336, does not support a reevaluation of *Amador*'s holding. In *Allegheny*, the court found an equal protection violation arising from a county tax assessor's policy of valuing real property on the basis of its recent purchase price, while only making minor modifications in the

---

[4] *Amador* also notes having two taxpayers pay different taxes on substantially identical property was not a wholly novel taxation scheme; i.e., sales tax on two identical items of personalty could vary substantially, depending on the exact sales price and the availability of a discount. A roughly comparable tax system was introduced under Proposition 13, whereby the taxes were closely related to the acquisition value of the property. (22 Cal.3d at pp. 235-236.)

assessments of land not recently sold, resulting in gross disparities in the assessed value of generally comparable property. (*Id.* at pp. 338-342 [102 L.Ed.2d at pp. 693-696].) *Allegheny*'s holding is expressly premised on the fact the state had *not* distinguished between the differently treated taxpayers, but rather had a singular system of taxation based on estimated market value, and the individual county assessor had apparently on her own initiative devised a different system. (*Id.* at p. 345 [102 L.Ed.2d at p. 698].) *Allegheny* acknowledges the general principle that a state may divide different kinds of property into classes and assign to each class a different tax burden so long as those divisions and burdens are reasonable. (*Ibid.*) Making reference to the classification system existing in California under Proposition 13, *Allegheny* notes it need not decide whether the county assessment method would stand on a different footing if it were the law of the state, generally applied, instead of an aberrational enforcement policy. (*Id.* at p. 344, fn. 4 [102 L.Ed.2d at p. 698].) *Allegheny* characterizes the California system as "grounded on the belief that taxes should be based on the original cost of property and should not tax unrealized paper gains in the value of the property." (*Ibid.*)

Since *Allegheny*'s holding is grounded on the unequal treatment of taxpayers who—in the absence of a state classification system—were in the same class, it does not undermine *Amador*'s holding. (*R. H. Macy & Co.* v. *Contra Costa County* (1990) 226 Cal.App.3d 352, 363-365 [276 Cal.Rptr. 530], review den.; *Nordlinger* v. *Lynch* (1990) 225 Cal.App.3d 1259, 1274, 1277 [275 Cal.Rptr. 684], review den.)

Amici curiae emphasize that *Amador* addresses only the facial constitutionality of the taxation system, whereas this case presents a challenge to the system as applied, warranting, at a minimum, an evidentiary hearing. However, *Amador* specifically cites an example where there would be a disparity between a property owner who purchased in 1975 as opposed to 1977, based on acquisition values of $40,000 and $80,000 respectively, for comparable properties. *Amador* thus recognized the likely disparities arising from the system as applied in an inflationary real estate market, and found no constitutional violation.[5] (Accord, *R. H. Macy & Co.* v. *Contra Costa County*, *supra*, 226 Cal.App.3d at pp. 361-362.) Indeed, an inflationary market is part of the rationale underlying the change from a current value to acquisition value system—i.e., as stated in *Allegheny*, to protect property owners from being taxed on "unrealized paper gains" in value.

---

[5] The dissent in *Amador Valley Joint Union High Sch Dist.* v. *State Bd. of Equalization*, *supra*, 22 Cal.3d at pages 251-255, also contains a lengthy analysis of the anticipated tax disparities which would arise from inflation of property values.

We note in the lengthy amici curiae briefing in opposition to the constitutionality of Proposition 13, policy arguments are presented as to the unfairness of the taxation system in terms of its impact on different socio-economic groups, and as to the ever-widening tax disparity between comparable properties with the passage of time.[6] Since the system was determined in *Amador* to be premised on a rationally based classification system to satisfy constitutional equal protection requirements, these arguments regarding the wisdom of the system are for the legislature not this court.

## RIGHT TO TRAVEL

■ Northwest Financial's assertion that Proposition 13 infringes on the constitutional right to travel was also rejected in *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at page 237. *Amador* rejects an argument the taxation system impaired the constitutional right to travel by requiring nonresidents or newly arrived residents to pay greater property taxes than established residents, thereby deterring property owners from moving to another location. *Amador* reasons that the change from a current value to acquisition value method would benefit all property owners, past and future, resident and nonresident, by reducing inflationary costs in assessments, limiting tax rates, and permitting the taxpayer to predict future tax liability. Under the former system, prospective purchasers arguably might have been deterred from purchasing (and thereby traveling) because of the unpredictable nature of future property tax liability resulting from unlimited inflationary pressures. Travel would be inhibited to no greater extent by the new system, establishing a more fixed and stable measure than that imposed by the former system of unconstrained property taxation based on current values. (*Id.* at pp. 237-238.)

■ A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right. (*Attorney General of N.Y.* v. *Soto-Lopez* (1986) 476 U.S. 898, 903 [90 L.Ed.2d 899, 905, 106 S.Ct. 2317].) When a classification drawn by a state—such as a distinction between older and newer residents—burdens the right to migrate, the state must come forward with a compelling justification for the classification. (*Id.* at p. 904 [90 L.Ed.2d at p. 906].) The right to travel protects residents of a state from being disadvantaged or treated differently,

---

[6] In contrast, amici curiae in support of the constitutionality of Proposition 13 point to its careful balance between the goals of tax limits (the 1 percent cap), tax certainty (limits on increases in assessed valuation), and stable revenue to local governments (reassessment upon change of ownership).

simply because of the timing of their migration, from other similarly situated residents. (*Ibid*. [90 L.Ed.2d at p. 906].)

 Northwest Financial's argument that the taxation system here discriminates against nonresidents or newer residents in favor of older residents, mischaracterizes the system. The taxation system, including its rollback feature for pre-1975 purchasers, differentiates between property purchasers, regardless of their residency. Both longtime residents, new residents, and nonresidents are subjected to the same "acquisition value" system—i.e., after 1975, a longtime resident who purchases real property, a new resident who comes into the state and purchases property, and a resident of another state who purchases California property, are all taxed based on acquisition value. Similarly, residents and nonresidents who purchased property before 1975 are all given the same "rollback" benefit. As explained in *Amador*, the change from a current value to an acquisition value method benefits all property owners, past and future, resident and nonresident. Since Proposition 13 does not create a classification premised on residency or the length of residency in the state, we are not faced with the issue of whether the classification is justified by a compelling state interest.[7] (Accord, *R. H. Macy & Co.* v. *Contra Costa County, supra*, 226 Cal.App.3d at pp. 367-369; *Nordlinger* v. *Lynch, supra*, 225 Cal.App.3d at p. 1281.)

Amici curiae argue that Proposition 13 also infringes on travel within the state, since property owners will be reluctant to sell and move because of higher taxes on their newly purchased property. As indicated in *Amador*, the acquisition value system carries the benefit of predictability of future tax bills, and in this respect could encourage travel more than the former current value system which had no such predictability. We conclude the connection between an increased tax burden arising from the sale and purchase of real property, is too tangential to the right to move freely within the state to be viewed as a constitutional infringement on the right to travel.[8] (Cf. *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 331 [118 Cal.Rptr. 315].)

---

[7]Northwest Financial asks us to reevaluate *Amador*'s rejection of the right to travel argument based on its perception of *Amador* as using a minimum scrutiny, rather than heightened scrutiny, test for infringement on the right to travel. Although *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra*, 22 Cal.3d at page 238, compares the arguable impact on travel between the old current value taxation system and the new acquisition value system, we do not construe the opinion as finding the system infringed on the right to travel thereby requiring scrutiny of the governmental purpose behind the classification. Since the system does not classify based on residency, it does not impact the right to travel in this regard.

[8]Amici curiae Ajalat & Polley assert the taxation system violates the Commerce Clause by virtue of its impact on commercial property. As recognized by Ajalat & Polley, Northwest

## DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Benke, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 11, 1991. Kennard, J., was of the opinion that the petition should be granted.

---

Financial's appeal presents no allegations pertaining to the impact on commerce, and we need not reach the issue.