[Civ. No. 49775. First Dist., Div. Five. June 3, 1983.]

CITY OF BERKELEY, Plaintiff and Respondent, v.
OAKLAND RAIDERS, Defendant and Appellant.

COUNSEL

Ralph A. Lombardi and Hardin, Cook, Loper, Engel & Bergez for Defendant and Appellant.

Natalie E. West, City Attorney, and Charles O. Triebel, Jr., for Plaintiff and Respondent.

OPINION

**HANING, J.**—This appeal presents the second half of the City of Berkeley versus the Oakland Raiders, wherein the Raiders continue to contest the city's professional sports events license tax. In *Oakland Raiders* v. *City of Berkeley* (1976) 65 Cal.App.3d 623 [137 Cal.Rptr. 648] (*Raiders I*), this court reversed a summary judgment in favor of the Raiders and upheld the ordinance in question as (1) a valid revenue measure within the police power of the city rather than a regulatory scheme, and (2) a tax on the privilege of performing a business, rather than a tax upon the property of the University of California where the Raiders' professional football games were played. The case was then tried, resulting in a judgment for the city. In this appeal the Raiders contend that: (1) The trial court erred in rejecting their timely request for findings; (2) the tax cannot be applied to concession income paid to the Raiders by their licensed vendors at the games; (3) the tax cannot be applied to receipts from advance ticket sales prior to the enactment of the ordinance, although the games occurred thereafter; and (4) the tax violates the equal protection clause of the California Constitution, article I, section 11, and the United States Constitution, Amendment XIV, section 1. We affirm the judgment.

The facts are undisputed. The city enacted a "Professional Sports Events License Tax" (Ord. No. 4703-N.S.),[1] effective July 9, 1974, subjecting promoters of professional sports events to an annual license tax of 10 percent of

---

[1]Ordinance No. 4703-N.S. provides:

"Section 1.2-26. PROFESSIONAL SPORTS EVENT.

"As used in this Ordinance, 'professional sports event' shall mean any sporting activity held at any place in the City of Berkeley wherein the participants are paid or compensated for their sporting services, whether in cash, securities, or otherwise and regardless of the amount of such services. Said definition shall not include athletes or students participating in athletic events wherein such athletes or students receive scholarships, grants-in-aid or similar financial support for educational purposes.

"Section 5.9. GROSS RECEIPTS TAX ON PROFESSIONAL SPORTS EVENTS.

"Every person commencing, transacting or carrying on any professional sports event in the City of Berkeley shall pay an annual license tax of ten percent (10%) of gross receipts measured as of the time or times such event or events as to which this tax is applicable may commence, be transacted or carried on in the City of Berkeley."

the gross receipts derived therefrom. The Raiders subsequently played two games in the city in 1974, and two in 1975. Concessions were sold at all four games by third party vendors who paid the Raiders a percentage of all sales. With regard to the 1974 games, approximately 50,840 season tickets were sold prior to the effective date of the ordinance, and attendance at each of those games was less than 50,000.

## FINDINGS OF FACT WERE NOT REQUIRED

Following receipt of the trial court's "Notice of Intended Decision," the Raiders timely requested findings of fact and conclusions of law which were denied on the grounds that "no disputed issues of fact" existed. ■ We conclude that the trial court was correct and that no error occurred.[2] Findings are not required when the facts are admitted or established by stipulation. (*Taylor v. George* (1949) 34 Cal.2d 552, 556 [212 P.2d 505].) There is no dispute concerning the wording of the ordinance, its effective date, the date of the games, the number of presold season tickets to the 1974 games, or the manner in which concession income was derived, and the parties stipulated to the amount of the gross receipts. The Raiders are contesting the constitutionality of the ordinance and its legal interpretation. Under these circumstances, no findings are required.[3] (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 306, subd. (e).)

## THE RAIDERS WERE NOT DENIED EQUAL PROTECTION

■ The Raiders argue that the tax deprives them of the equal protection guarantees of the state and federal Constitutions because the city discriminated against professional sports events by levying the tax on them, but not on amateur athletic events or other businesses. (3) "[T]he power of [legislative bodies] to make classifications of persons or property for the purpose of taxation is very broad." (*Roth Drug, Inc.* v. *Johnson* (1936) 13 Cal.App.2d 720, 733 [57 P.2d 1022].) Business taxes are presumed to be rationally based if any conceivable state of facts exists to support them. (*City of San Jose* v. *Donohue* (1975) 51 Cal.App.3d 40, 45 [123 Cal.Rptr. 804]; *Ladd* v. *State Bd. of Equalization* (1973) 31 Cal.App.3d 35, 38 [106 Cal.Rptr. 885]; see also *Pittsburgh* v. *Alco Parking Corp.* (1974) 417 U.S. 369 [41 L.Ed.2d 132, 94 S.Ct. 2291].) ■ Businesses, occupations and the entertainment industry may properly be subdivided and classified separately for license tax purposes. (*Tax Commissioners* v. *Jackson* (1930) 283 U.S. 527, 537 [75 L.Ed. 1248, 1255, 51 S.Ct.

---

[2]The trial occurred prior to the amendment of Code of Civil Procedure section 632 and rule 232 eliminating the necessity of findings of fact and conclusions of law and substituting in lieu thereof a statement of decision.

[3]The city has adopted the statement of facts set forth in the Raiders' brief. The legal arguments advanced by the Raiders are all based on facts which the city accepts. The Raiders do not suggest what facts were in dispute, nor do they suggest any findings the trial court should have made.

540, 73 A.L.R. 1464]; *Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 142-143 [222 P.2d 879].) ■ "No constitutional rights are violated if the burden of the license tax falls equally upon all members of a class, though other classes have lighter burdens or are wholly exempt, provided that the classification is reasonable, based on substantial differences between the pursuits separately grouped, and is not arbitrary." (*Fox etc. Corp., supra,* 36 Cal.2d at p. 142.) ■ Measured against existing precedents involving similar legislation,[4] we conclude that the city can classify professional sporting events differently from other businesses, and can also exempt amateur or school-connected athletic events and impose a tax upon those that exist for profit. We hold that the tax in question is rationally based. The Raiders argue that the amount of the tax is unreasonable, but there is no requirement that the amount of the tax be reasonable—merely that it not be confiscatory nor prohibitory. (*Fox etc. Corp., supra,* 36 Cal.2d at p. 139.) There is no evidence that this tax falls into those categories.

### No Denial of Due Process

■ The argument that the taxation of gross receipts acquired prior to the enactment of the ordinance from advance ticket sales constitutes a deprivation of property without due process of law misconstrues the nature of the tax and compares it to an income tax, which it is not. Rather, it is a license tax upon the privilege of conducting a business. (*Raiders I, supra,* 65 Cal.App.3d at p. 627; *Franklin* v. *Peterson* (1948) 87 Cal.App.2d 727, 733 [197 P.2d 788].) In this instance, the business taxed is the exhibition of professional football games occurring after the enactment of the ordinance. The gross receipts are merely the yardstick by which the license tax is measured. The Raiders were accorded due process. (See *Westfield-Palos Verdes Co.* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 486, 493-496 [141 Cal.Rptr. 36].)

### Concession Income Is Included in Gross Receipts

■ Finally, the Raiders contend that funds received from vendors they licensed to provide food and drink for fans attending the ball games should not be included in their gross receipts. They cite no authorities to support this

[4]As a partial example, see *Pittsburgh* v. *Alco Parking Corp.* (1974) 417 U.S. 369 [41 L.Ed.2d 132, 94 S.Ct. 2291] (upholding a tax on private, off-street parking lots in competition with municipally owned lots and residential lots); *Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136 [222 P.2d 879] (upholding a higher tax on motion picture theatres than on other places of amusement or entertainment); *Hansen* v. *Town of Antioch* (1941) 18 Cal.2d 110 [114 P.2d 329] (upholding a higher tax on itinerant peddlers than on businesses with a fixed place of business within the city); *Gutknecht* v. *City of Sausalito* (1974) 43 Cal.App.3d 269 [117 Cal.Rptr. 782] (upholding a higher tax on "take-out food" restaurants than conventional restaurants); *People* v. *Keith Railway Equipment Co.* (1945) 70 Cal.App.2d 339 [161 P.2d 244] (upholding a higher tax on privately owned railway cars than those owned by railway companies).

proposition. However, the ordinance defines gross receipts to include such income. Section 1.2-3 of the ordinance states, in pertinent part: " 'Gross receipts' means the total amount of the sale price of all sales and the total amount charged or received for the performance of any act, service, or employment of whatever nature it may be, for which a charge is made or credit allowed, whether or not such service, act, or employment is done as a part of or in connection with the sales of goods, wares or merchandise." Applying established rules of statutory construction (see *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658-659 [147 Cal.Rptr. 359, 580 P.2d 1155]), we agree with the trial court that the ordinance encompasses such funds.

The judgment is affirmed.

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied June 23, 1983, and appellant's petition for a hearing by the Supreme Court was denied July 27, 1983. Broussard, J., did not participate therein.