[No. C000669. Third Dist., May 12, 1987.]

JOYCE JOHNSTON, Plaintiff and Respondent, v.
DEPARTMENT OF PERSONNEL ADMINISTRATION, Defendant and
Appellant;
DEPARTMENT OF HEALTH SERVICES, Real Party in Interest and
Respondent.

1220

**COUNSEL**

Talmadge R. Jones, Christine A. Bologna and Lester L. Jones for Defendant and Appellant.

Loren E. McMaster for Plaintiff and Respondent.

No appearance for Real Party in Interest and Respondent.

## Opinion

**CARR, J.**—In this appeal by the Department of Personnel Administration (DPA) from the issuance of a peremptory writ of mandate directing DPA to set aside its decision denying petitioner Joyce Johnston (Johnston) a hearing and to proceed with a hearing on the merits of her appeal, DPA asserts the trial court erred in finding Johnston is entitled to an administrative hearing on whether her intra-agency job transfer was made for the purpose of disciplining or harassing her. DPA further asserts the trial court erred in finding Johnston had a property right sufficient to require a full evidentiary hearing. We conclude that Johnston has a statutory entitlement to an administrative hearing on whether her intra-agency transfer was made for the purpose of disciplining or harassing her. We therefore do not consider whether the transfer of a state employee is a deprivation of a property right which can only be accomplished consistent with the requirements of procedural due process. We shall affirm the judgment.

### Facts

Johnston is employed as an attorney with the real party in interest, Department of Health Services (DHS) in the job classification of staff counsel III. Her petition alleged that on September 11, 1984, she and her supervisors had a dispute about whether she could attend a legislative committee hearing on her own time. Johnston's request to attend the hearing was denied. Johnston lodged a protest and attended the hearing.

On September 17, 1984, Johnston's position as lead attorney was abolished; on October 15, 1984, she was transferred to another section of DHS.

On November 6, 1984, Johnston filed a protest with DPA alleging her reassignment was an involuntary transfer done for the purpose of harassing or disciplining her and thus subject to review by the DPA pursuant to Government Code section 19994.3.

On July 3, 1985, the appeal came on for hearing.[1] The hearing officer

---

[1]The grievance first came on for hearing before an administrative law judge on February 19, 1984. The judge on his own motion declined to hear the appeal because of a potential

issued a proposed decision dismissing Johnston's appeal for lack of jurisdiction. This decision was premised on the conclusion that jurisdiction was lacking to hear the appeal because Government Code section 19994.3 does not apply to transfers such as this which do not reasonably require a change in the place of residence.

Johnston then commenced this action pursuant to Code of Civil Procedure section 1094.5.[2] The trial court first determined Johnston had been moved to another position within the same job classification and had thereby been transferred as defined in Government Code section 19994.1. The trial court then concluded Johnston has a statutory right to an administrative hearing before the DPA pursuant to Government Code section 19994.3. Accordingly, a peremptory writ of mandate was issued to command DPA to proceed with a hearing on the merits of Johnston's appeal. This appeal followed.

## DISCUSSION

■ "A writ of mandate will lie only 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . .' (Code Civ. Proc., § 1085.)" (*Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 863 [132 Cal.Rptr. 464, 553 P.2d 624].) In particular, there must be a clear, present, ministerial duty upon the part of the respondent and a correlative clear, present, and beneficial right in the petitioner to the performance of that duty. (*Ibid.*; see also generally 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 65, pp. 702-704.) The writ will not issue where there is a "plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.)

■ Johnston contends the right and corresponding duty upon which she bases her claim to entitlement to a hearing arise out of the provisions of Government Code section 19994.3. DPA contends the trial court erred in finding Government Code section 19994.3 requires that Johnston be given an evidentiary hearing with respect to her transfer and that a review is required pursuant to section 19994.3 only when a transfer requires a change in residence.

---

jurisdictional conflict between Johnston's appeal and the grievance procedure set forth in a memorandum of understanding (MOU) adopted pursuant to the state Employer-Employee Relations Act (SEERA). (Gov. Code, §§ 3512-3524.) This preliminary determination was referred back to DPA, which determined no such conflict existed and rereferred the appeal to the hearing office. The parties agree that there is no MOU applicable herein.

[2]The trial court concluded review is appropriate pursuant to Code of Civil Procedure section 1085 because the remedy Johnston seeks is that she be afforded an administrative hearing.

The provisions governing the transfer of civil service employees are contained in chapter 5 (§§ 19994-19994.10) of part 2.6 of title 2 of the Government Code.[3] The types of transfers to which an appointing power may subject an employee are set forth in section 19994.1, which provides: "An appointing power may transfer any employee under his or her jurisdiction: (a) to another position in the same class; or (b) to another position in a different class designated as appropriate by the State Personnel Board; or (c) any employee from one location to another whether in the same position, or in a different position as specified above in (a) or (b)."

As to the right of an employee to protest a transfer, section 19994.3 states in relevant part: "(a) If a transfer is protested to the department by an employee as made for the purpose of harassing or disciplining the employee, the appointing power may require the employee to transfer pending approval or disapproval of the transfer by the department. If the department disapproves the transfer, the employee shall be returned to his or her former position, shall be paid the regular travel allowance for the period of time he or she was away from his or her original headquarters, and his or her moving costs both from and back to the original headquarters shall be paid in accordance with the department rules."

Certain rules of statutory construction guide our consideration. In *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] the court stated: ■ "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' . . . We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]"

As a general rule of statutory construction, if a statute announces a general rule and makes no exception thereto, the courts can make none. (*Stockton Theatres, Inc.* v. *Palermo* (1956) 47 Cal.2d 469, 476 [304 P.2d 7].) A court may not insert into a statute qualifying provisions not included or rewrite a statute to conform to an inferred intention that does not appear from its language. (*Mills* v. *Superior Court* (1986) 42 Cal.3d 951, 957 [232 Cal.Rptr. 141, 728 P.2d 211].)

■ On its face section 19994.3 applies to all transfers without qualification. What types of transfers may be protested is ascertained by reference to section 19994.1, which sets forth the types of transfers to which the appointing power may subject an employee. Included within those transfers is a transfer to another position in the same class.

---

[3]All further references are to the Government Code unless otherwise provided.

DPA contends the legislative history of the transfer statute demonstrates that the Legislature intended that only protests of geographical transfers be subject to review. The legislative history of section 19994.3 does not support DPA's contention. The clear language of these sections from 1939 to the present indicates that transfers alleged to have been made for improper purposes are subject to review, notwithstanding that they do not entail a change of geographic location.

The rights of civil service employees to protest transfers were originally provided for by amendments made to section 144 of the State Civil Service Act by chapter 898 of the Statutes of 1939 (pp. 2508-2509). As amended, section 144 provided: "An appointing power may at any time transfer any employee under his jurisdiction from one position to another in the same class or in another class having substantially similar duties, responsibilities, and qualifications and substantially the same salary range. In every such case the appointing power shall give written notice of his action to the board, according to rules therefor prescribed by the board. No such transfer shall be made, or if made the same shall be revoked, unless approved by the board, in the event the same is protested to the board by the employee as being made for the purpose of harassing or disciplining the employee affected."

In 1945 the State Civil Service Act was codified in the Government Code. The substance of section 144 of the State Civil Service Act was continued in sections 19360 and 19361. Section 19360 provided: "An appointing power may at any time transfer any employee under his jurisdiction from one position to another in the same class or in another class having substantially similar duties, responsibilities, and qualifications, and substantially the same salary range. In every such case the appointing power shall give written notice of his action to the board, according to board rule." Section 19361 then provided: "If a transfer is protested to the board by an employee as made for the purpose of harassing or disciplining him, the transfer shall not be made, or if theretofore made shall be revoked, unless approved by the board." (Stats. 1945, ch. 123, p. 561.)[4]

As initially enacted in 1939, and as codified in 1945, these sections clearly provided for the right to protest any transfer regardless of whether the transfer required a change of residence. In 1955 the second and third sentences of what is now section 19994.1, and the second sentence of current section 19994.3 were added to the code relating specifically to transfers which reasonably require a change of residence. Nothing in the amendments

---

[4]Sections 19360 and 19361 were subsequently amended and renumbered sections 19994.1 and 19994.3, respectively. (Stats. 1981, ch. 230, pp. 1217-1218.)

is indicative of an intent by the Legislature to restrict review of transfers to those requiring a change of residence.[5]

DPA urges that interpreting section 19994.3 as applying to all transfers made for the purpose of harassing or disciplining the employee fails to give proper deference to the administrative interpretation of the statute. ■ When an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts and will ordinarily be followed if not clearly erroneous. (*San Lorenzo Education Assn.* v. *Wilson* (1982) 32 Cal.3d 841, 850 [187 Cal.Rptr. 432, 654 P.2d 202].)

The rule is applied to administrative regulations promulgated by an administrative body authorized to promote a statute's purposes. (See, e.g., *Norman* v. *Unemployment Ins. Appeals Bd.* (1983) 34 Cal.3d 1, 8 [192 Cal.Rptr. 134, 663 P.2d 904]; *In re Kelly* (1983) 33 Cal.3d 267, 277 [188 Cal.Rptr. 447, 655 P.2d 1282].) Conversely, an "administrative construction" which has not been promulgated in substantial compliance with the Administrative Procedure Act merits no weight as an agency interpretation. (Subd. (b), § 11342, and §§ 11346 and 11350; *Armistead* v. *State Personnel Board* (1978) 22 Cal.3d 198, 205 [149 Cal.Rptr. 1, 583 P.2d 744].) ■ In the instant case, DPA's "administrative interpretation" is not found in any regularly promulgated regulation, but is contained in a series of inter-departmental communications. The usual deference given to a formal agency interpretation of a statute is inappropriate.

"In any event, administrative construction of a statute, while entitled to weight, cannot prevail when a contrary legislative purpose is apparent. [Citations.]" (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 117 [172 Cal.Rptr. 194, 624 P.2d 244].) Such is the case here. The clear concern of section 19994.3 is discipline or harassment achieved through a transfer. It is equally apparent the Legislature sought to prevent such abuses. To confine administrative appeals to transfers which entail a change of residence would thwart the legislative intent to prevent transfers for purposes of discipline or harassment in all cases. If DPA's interpretation were accepted, it would permit transfers which do not involve a change of residence, but which are challenged as being for improper purposes, to go unreviewed.

---

[5]In 1972, Senate Resolution 71 was adopted by the Senate and provided "[T]he Members affirm their intent that nothing in Sections 19360 and 19361 shall be construed as denying jurisdiction to the State Personnel Board over protested transfers not involving physical changes in residence, . . ." (3 Sen. J. (1972 Reg. Sess.) p. 4744.) In response to Senate Resolution 71, the State Personnel Board adopted a policy of informally reviewing and investigating nongeographic transfers. This practice remained in effect until the State Employer-Employee Relations Act was adopted in 1978.

We conclude section 19994.3 requires Johnston be given a hearing with respect to her transfer as she alleges the transfer was made for the purpose of harassing or disciplining her. This conclusion renders it unnecessary for us to consider whether, in the absence of the provision, Johnston would be entitled to a hearing pursuant to the due process guarantees of the state and federal Constitutions.

■ DPA further contends the trial court erred in issuing the writ because Johnston has several separate and sufficient remedies apart from the statutory appeal procedure. In particular DPA points to section 3519 which makes it unlawful for the state to impose reprisals on employees because of their exercise of rights under SEERA, sections 19700 to 19706, which make it unlawful to discriminate against an employee, and the federal Civil Rights Act (42 U.S.C. § 1983 et seq.) which gives a remedy to parties deprived of constitutional rights, privileges, and immunities by an official's abuse of his position. Whether a plain, speedy and adequate remedy exists at law is a question primarily within the trial court's discretion. (*San Joaquin County Employees Assn.* v. *City of Stockton* (1984) 161 Cal.App.3d 813, 820 [207 Cal.Rptr. 876].) Nothing in Johnston's complaint implicates the availability of any of these remedies. The trial court did not abuse its discretion by implicitly determining Johnston does not have an adequate remedy pursuant to any of these provisions.

■ DPA next asserts that the courts may not create a substantive or procedural employee right which the Legislature, through SEERA, has deemed to be negotiable. DPA relies upon *Sullivan* v. *State Bd. of Control* (1985) 176 Cal.App.3d 1059 [225 Cal.Rptr. 454]. In that case we determined that a writ of mandate did not lie to compel the California Highway Patrol to refrain from ordering its officers to appear as witnesses in court absent service of a lawful subpoena or to compel either the state or county government to compensate the officers for time spent on standby status as peace officer witnesses. (*Id.,* at p. 1061.) We based our conclusion on the absence of any legal basis, contractual, statutory or otherwise, upon which either duty could be predicated. (*Id.,* at pp. 1063, 1067.) In the instant case, it is not the court which created the employee right, but the Legislature.

DPA asserts that should the trial court's interpretation be upheld, it will invite a deluge of requests for full evidentiary hearings of every routine change in job assignment within the state civil service workforce of over 180,000 employees. DPA's argument is more appropriately addressed to the Legislature. We have concluded the Legislature intended that transfers made for the purpose of harassing or disciplining an employee be subject to review. ■ The sole judicial function is to enforce statutes as written. This court is without the authority to determine the wisdom, desirability, or propriety

of statutes enacted by the Legislature. (*Estate of Horman* (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785].)

■ Finally, Johnston requests that she be awarded her attorney fees pursuant to Code of Civil Procedure section 1021.5 and Government Code section 800. Johnston has not appealed from the judgment which denied her attorney fees and our sole concern is whether she is entitled to these fees on appeal.[6] Code of Civil Procedure section 1021.5 authorizes court-awarded attorney fees under a private attorney general theory. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874].) That section provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

Section 800 provides for attorney fees to a prevailing party in an action to review the finding of an administrative proceeding when the administrative determination results from "arbitrary or capricious action or conduct by a public entity or an officer thereof in his official capacity."

Johnston asserts she has vindicated an important right affecting the public interest. She first characterized the right involved as "the rights of public employees not to be involuntarily transferred because they exercise their rights to attend legislative hearings on their own time." There has been no such showing. She also asserts she has vindicated the right of employees to have their rights determined by statute and not by unpublished administrative interpretations. Johnston has made no showing, either before the trial court or here, as to the number of civil service employees who have been denied appeals because their transfers did not involve a change of residence. She does not meet the statutory requirement of the Code of Civil Procedure section 1021.5 that a benefit has been conferred on a large class of persons.

---

[6]It is the general rule that a respondent who has not appealed from the judgment may not urge error on appeal. (See, e.g., *Puritan Leasing Co.* v. *August* (1976) 16 Cal.3d 451, 463 [128 Cal.Rptr. 175, 546 P.2d 679]; *Henigson* v. *Bank of America* (1948) 32 Cal.2d 240, 244 [195 P.2d 777]; *Ray* v. *Parker* (1940) 15 Cal.2d 275, 282 [101 P.2d 665]; *California C. P. Growers* v. *Williams* (1938) 11 Cal.2d 233, 238 [78 P.2d 1161].)

Johnston also contends the dismissal of her appeal by DPA was arbitrary and capricious and she is entitled to attorney fees pursuant to section 800. Given the long-standing administrative practice, DPA's action may have been erroneous, but it was not arbitrary and capricious. Johnston is not entitled to attorney fees under section 800.

The judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.