[No. A055203. First Dist., Div. Four. Mar. 29, 1993.]

CITY OF BERKELEY, Plaintiff, Cross-defendant, and Respondent, v.
MOSHE E. CUKIERMAN, Defendant, Cross-complainant, and Appellant.

COUNSEL

David A. Self and Andrew S. Cohn for Defendant, Cross-complainant, and Appellant.

Manuela Albuquerque, City Attorney, and Thomas B. Brown, Deputy City Attorney, for Plaintiff, Cross-defendant, and Respondent.

OPINION

ANDERSON, P. J.—Defendant and cross-complainant Moshe E. Cukierman (appellant) appeals from the trial court's judgment awarding relief to plaintiff and cross-defendant City of Berkeley (City or respondent) in an action brought to collect unpaid taxes under the Berkeley Business License Tax Ordinance.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Regulatory Scheme*

In 1977 the City enacted a Business License Tax Ordinance (Ordinance) which requires that certain businesses (including hotels) pay annual business license taxes. The Ordinance, periodically amended since 1977 to reflect

increases in the tax rates, is contained in the Berkeley Municipal Code,[1] section 9.04.005 et seq. Under the Ordinance, the business license tax is computed based upon the gross receipts of the business, multiplied by a tax factor which varies depending on the type, nature and projected profitability of the targeted business activity. A failure to pay the business license tax in a timely fashion gives rise to imposition of penalties and interest in addition to the tax itself. (§§ 9.04.110, 9.04.120.)

In addition to taxing numerous other business activities, the Ordinance imposes an annual license tax on rental of real estate. While section 9.04.195, subdivision A, levies a business license tax on landlords (i.e., lessors of buildings or other real property),[2] section 9.04.195, subdivision B, explicitly extends this tax burden to providers of lodgings for five or more persons. (See discussion, *infra.*)

When the Ordinance was enacted in 1977, under section 9.04.195 the taxpayers were taxed at a rate of $1.05 per $1,000 in gross receipts. (§ 9.04.240.) However, following the adoption of Proposition 13 which substantially reduced receipts from property taxes, the City was compelled to obtain the lost revenues from other sources. Several revenue-enhancing proposals were submitted to the City for consideration. The Council Revenue Committee (Revenue Committee) suggested a ninefold increase of tax rates applicable to rental business in general, focussing on the need to raise revenues to offset the loss resulting from the adoption of Proposition 13. Council member Denton, in turn, recommended a tenfold increase in the tax rates limited only to the landlords with the objective to recoup the "windfall" bestowed upon the landlords by Proposition 13. The city council rejected the proposal of both the Revenue Committee and Denton and adopted, instead, a sixfold increase for all rental businesses taxed under section 9.04.195. In so doing, the City emphasized that the revenue increase was necessary to overcome the detrimental effect of Proposition 13 on the city's finances.

The business license tax rates specified in section 9.04.240 have been periodically amended since 1977. The current rate on rental businesses under section 9.04.195 is $10.81/$1,000 in gross receipts.

---

[1]Unless otherwise indicated, all section references are to the Berkeley Municipal Code.

[2]Entitled "Rental of Real Property," section 9.04.195 provides in pertinent part: "A *Every person engaged in the business of renting or letting a building structure, or other property* or a portion of such building, structure, or property within the city for any purpose, except property designated for and used exclusively for residential use which contains fewer than three dwelling units, *shall pay an annual license fee as provided in Section 9.04.240* of this chapter for each thousand dollars of gross receipts." (Italics added.)

## B. *Operative Facts*

Appellant operates the Shattuck Hotel at 2086 Allston Way in downtown Berkeley. He was (and is) the operator of the hotel. For the tax year of 1989 appellant had gross receipts in the sum of $2,097,253 whereas the total sum of gross receipts for the tax year of 1990 was $2,762,062.20. In both these years the gross receipts derived from the following activities: providing sleeping rooms to guests on a short-term basis; providing sleeping rooms to guests under special contractual arrangements; receipts from room rental for meetings, seminars, training, conferences, etc.; receipts from operation of the Sedona Restaurant within the hotel; receipts from providing food and beverage for meetings, seminars conferences and hotel guests (i.e., continental breakfast, etc.); receipts from telephone charges to the hotel guests; and receipts from miscellaneous services such as laundry, crib rentals, dry cleaning, fax, shoeshine, etc., provided to overnight hotel guests. At the applicable rate of $10.81 per $1,000 in gross receipts, appellant's tax liability for the tax years of 1989-1990 (including penalties, interest and the amounts already paid) totalled $84,501.63.

## C. *Procedural History*

The present action was initiated by the City by filing a complaint to collect unpaid business license taxes. Appellant filed a cross-complaint for declaratory relief alleging, inter alia, that the Shattuck Hotel was incorrectly classified under the Ordinance or, in the alternative, that the Ordinance violated the equal protection clause of the Constitution. The parties filed cross-pleadings. Appellant sought judgment on the pleadings on the City's complaint, while the City demurred to appellant's first amended cross-complaint. After taking judicial notice of the Ordinance and the legislative history thereof, the trial court sustained the City's demurrer and denied appellant's motion for judgment on the pleadings.

The case proceeded to trial on the remaining issue of whether all the receipts derived from the hotel's activity should be taxed at the same rate in view of section 9.04.195, subdivision D, which provides that the lessor may not combine income derived from real property rental with receipts coming from other business activities. Based upon the stipulated facts, the trial court concluded that all receipts of the Shattuck Hotel should be taxed at the rate set out in section 9.04.240 because the ancillary activities relied on by appellant (i.e., providing food and beverage service, telephone, meeting rooms, etc.) constituted an integral part of the hotel's business. In accordance therewith, the trial court entered judgment for the City in the sum of $84,501.63, plus costs.

## II. Discussion

On appeal appellant contends that the decision of the trial court is erroneous and should be reversed for three fundamental reasons: (1) the legislative history of the Ordinance suggests that the City intended to raise business license taxes only as to owners who rent real property, not as to mere lessees, such as appellant; (2) if the Ordinance is to be interpreted so as to sustain the higher taxation of nonowner tenants of hotels, it violates the equal protection clause of the Constitution because no rational basis exists to justify the discriminatory tax burden imposed on appellant; and (3) even if the Ordinance meets the constitutional standards, the judgment below still should be modified because certain income items received by appellant derived from activities other than hotel rental and, hence, should have been separated and taxed at a lower rate in accordance with section 9.04.195, subdivision D. We disagree with appellant on all three issues and affirm the judgment.

### A. *The Ordinance Is Applicable to Operators of Hotels Providing Lodging for Guests*

Section 9.04.195, subdivision B, provides that *"Every person* engaged in the business of *providing lodging for five or more persons, for* direct or indirect *compensation, shall pay an annual license fee* as provided in Section 9.04.240 of this chapter for each thousand dollars of gross receipts." (Italics added.)

▮ Despite the plain language of the Ordinance and the undisputed facts showing that appellant as hotel operator is in the business of providing lodging for guests for compensation, appellant argues that he does not fall within section 9.04.195, subdivision B. Appellant's argument rests on the following logic: (1) the Ordinance is ambiguous in several respects; (2) under settled law these ambiguities must be resolved so as to give effect to the intent of the Legislature (i.e., City) (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605) [200 Cal.Rptr. 575]); and (3) the legislative intent gathered from extrinsic evidence (especially the history of adoption of the Ordinance) demonstrates that the City intended to tax only the rental of real property by owners who profited from Proposition 13, not the lessees of such property. Appellant's argument is supported by neither the law nor the facts.

The rules of statutory construction are well established. ▮ In interpreting a statute, the court should ascertain the intent of the Legislature so as

to effect the purpose of the law. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) In determining the legislative intent the court first turns to the language of the enactment. (*Burnsed* v. *State Bd. of Control* (1987) 189 Cal.App.3d 213, 217 [234 Cal.Rptr. 316].) Words in the statute must be given their ordinary meaning. (*Johnston* v. *Department of Personnel Administration* (1987) 191 Cal.App.3d 1218, 1223 [236 Cal.Rptr. 853].) If the statutory language is clear and unambiguous, there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (i.e., extrinsic evidence). (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *City of Los Angeles* v. *Wilshire Crest Medical Group* (1980) 113 Cal.App.3d 887, 891 [170 Cal.Rptr. 325].) This is so because the statutory language expresses the intention of the Legislature and where it is free from doubt and ambiguity, it must be followed even if it may appear from other sources that the Legislature had a different object in mind. (*Guelfi* v. *Marin County Employees' Retirement Assn.* (1983) 145 Cal.App.3d 297, 307 [193 Cal.Rptr. 343].)

 The case herein falls squarely within the above stated principles. The disputed language of the Ordinance sets out clearly and without equivocation that *every* person (without qualification) who, as a part of his business, provides lodging for the number of people defined in the Ordinance and receives direct or indirect compensation for such service must pay the business license tax as specified in section 9.04.240. It is, of course, settled beyond dispute that if a statute announces a general rule and makes no exception thereto, the court can make none. It is equally recognized that the court may not insert into a statute qualifying provisions not intended by the Legislature, nor may it require the statute to conform to an assumed legislative intent which does not appear from the language of the statute itself. (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 674 [56 Cal.Rptr. 265, 423 P.2d 193]; *Johnston* v. *Department of Personnel Administration*, *supra*, 191 Cal.App.3d at p. 1223; *Burnsed* v. *State Bd. of Control*, *supra*, 189 Cal.App.3d at p. 217.)

 By stretching imagination, appellant nonetheless contends that the Ordinance is ambiguous in several respects and, hence, subject to interpretation. Thus, it is alleged that: (1) there is ambiguity between the title of section 9.04.195 and subdivision B thereof because while the title ("Rental of Real Property") implies that the section applies to the lessors (i.e., who rent real property), subdivision B purports to regulate the tax obligation of hotel operators (and the like) who are merely lessees (tenants); (2) the term "providing lodging" is also ambiguous because even though lodgers are mere licensees (not tenants) (*Edwards* v. *City of Los Angeles* (1941) 48

Cal.App.2d 62, 67 [119 P.2d 370]), section 9.04.195 deals with rental of real property which presupposes creation of tenancy; and (3) the phrase "providing lodging for direct and indirect compensation" adds to the ambiguity because it implies that subdivision B of the section imposes a tax burden upon both the lessor (landlord) and the lessee (tenant) for the same activity and, thus, results in double taxation. Appellant's contentions are meritless.

■ First, the law is clear that the title of legislation may not be used to control or enlarge the positive provisions of the statute. (*In re Bandmann* (1958) 51 Cal.2d 388, 392 [333 P.2d 339]; *People* v. *Nichols* (1970) 3 Cal.3d 150, 159 [137 Cal.Rptr. 1, 560 P.2d 1180] [disapproved on other grounds in *People* v. *Henderson* (1977) 19 Cal.3d 86, 96 (137 Cal.Rptr. 1, 560 P.2d 1180)].) It has been likewise held that chapter and section headings cannot be resorted to for the purpose of creating ambiguity when none exists. (*Sullivan* v. *Fox* (1987) 189 Cal.App.3d 673, 679-680 [235 Cal.Rptr. 5].)

■ Appellant's second argument is equally unfounded. Under dictionary definitions "lodging" is "a temporary place to stay" (Webster's Ninth Collegiate Dict. (1987) p. 702); "a temporary place to stay or live" (Random House Dict. (Ballantine ed. 1980) p. 517); "sleeping accommodations; rented rooms" (American Heritage Dict. (2d college ed. 1982) p. 740); and "a place to sleep or live; rented living quarters (Webster's II New Riverside Dict. (Berkeley ed. 1984) p. 411). ■ The case law confirms that lodgers are similar to hotel guests who rent rooms for a temporary stay. (*Edwards* v. *City of Los Angeles, supra,* 48 Cal.App.2d at p. 68; see also *Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 421 [282 P.2d 890]; *Fox* v. *Windemere Hotel Apart. Co.* (1916) 30 Cal.App. 162, 164-165 [157 P. 820].) ■ Moreover, regardless of the title of the section, subdivision B of section 9.04.195 explicitly states that the provider of lodging is subject to a business license tax irrespective of the nature of the legal relationship between the provider and the guest. Undoubtedly, appellant provides a "temporary place to stay" and "sleeping accommodations" to his guests and, thus ipso facto, is subject to the business license tax provisions of the Ordinance.

Finally, a potential creation of double taxation does not render the Ordinance either ambiguous or illegal. ■ The case law holds only that there be no double taxation of property. The mere fact that the state (or local authority) imposes one excise tax upon one activity does not prevent the state or local authority from imposing another excise tax upon the same privilege for the same period. (*Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 140 [222 P.2d 879].) To put it another way, the constitutional prohibition against double taxation applies only to ad valorem property

taxes, and property tax and excise tax can be imposed simultaneously. (*Pesola* v. *City of Los Angeles* (1975) 54 Cal.App.3d 479, 485-486 [126 Cal.Rptr. 580].)

■ Appellant's additional contention that the legislative history of the Ordinance compels the conclusion that the City intended to tax only the lessor-owners of rented real property instead of the lessees thereof, is likewise unfounded and must be rejected for at least three elementary reasons.

■ First, where, as here, the Ordinance is clear and unambiguous, the legislative intent must be determined from the language of the legislation, rather than extrinsic evidence. (*Lungren* v. *Deukmejian, supra*, 45 Cal.3d at p. 735; *Guelfi* v. *Marin County Employees Retirement Assn., supra*, 145 Cal.App.3d at p. 307.) ■ Second, contrary to appellant's contention, the legislative history of the Ordinance shows that the City intended to increase the business license taxes in general in order to obtain new sources of revenues necessitated by revenue losses caused by Proposition 13. (See legislative findings, discussed *infra*.) Third, while Councilman Denton (and to some extent the Revenue Committee) expressed the view that the revenue increase should be aimed at landlords of real property who profited from Proposition 13, the City rejected these views by adopting section 9.04.195 which raises the business license tax as to both the landlord owners (subd. A) and the providers of lodging such as appellant (subd. B). ■ It is, of course, axiomatic that in order to determine the statutory intent, the court relies on the expression of the intent of the entire legislative body rather than statements made by individual members of the Legislature. (*Friends of Mammoth* v. *Board of Supervisors, supra*, 8 Cal.3d at p. 258; *Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 881 [484 P.2d 1345, 42 A.L.R.3d 1392].)

### B. *The Ordinance Does Not Violate the Equal Protection Clause of the Constitution*

■ Appellant next argues that even if the disputed section of the Ordinance applies to the hotel operation, it is invalid because it contravenes the equal protection clause of the Constitution inasmuch as the City did not (and could not) have a reasonable basis for taxing lessee hotels at a higher rate than other retail businesses. More accurately, appellant claims that the tax classification in the Ordinance is arbitrary and lacks the requisite rational basis because: (1) the reasons stated by the City for classification are inadequate to justify the imposition of a higher tax on appellant's business; (2) there is no reasonable or substantial difference between appellant's hotel operation and other businesses whose taxes were not raised; and (3) at any

rate, there is no reasonable ground for imposing a sixfold tax raise on appellant's hotel business. The equal protection challenge against the Ordinance is devoid of any merit.

### (1) *Propriety of Tax Classification*

In its demurrer to appellant's first amended cross-complaint, the City alleged that it "amended its business license tax ordinance in 1978 to create a new rate structure in response to Proposition 13. This amendment had two recognized purposes: (1) to offset revenue loss, and (2) to prevent some taxpayers from reaping a windfall under Proposition 13." In addition, the demurrer mentioned that in raising the tax rate, the City took into account similar tax raises by the City of Oakland.

Appellant contends that none of the foregoing reasons provide sufficient basis for the classification and as a consequence, the Ordinance should be held constitutionally infirm. This contention of appellant fails on two principal grounds: (1) regardless of the reasons stated therefor, the tax classification is presumed to be constitutional and must be upheld if any reasonable basis can be conceived in support thereof; and (2) the loss of revenues resulting from the adoption of Proposition 13 provides sufficient justification for raising the business tax rates.

■■■ It is well settled that the power of a municipality to classify for the purpose of taxation is very broad. (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1016 [106 Cal.Rptr. 867].) Tax classifications carry a presumption of constitutionality which can be overcome only by the most explicit demonstration that the classification is a hostile and oppressive discrimination against particular persons or groups. (*R. H. Macy & Co.* v. *Contra Costa County* (1990) 226 Cal.App.3d 352, 362 [276 Cal.Rptr. 530].) The party who challenges the constitutionality of a classification in a tax statute bears a very heavy burden; it must negate any conceivable basis which might support the classification. (*Lehnhausen* v. *Lake Shore Auto Parts Co.* (1973) 410 U.S. 356, 364 [35 L.Ed.2d 351, 357-358, 93 S.Ct. 1001]; *R. H. Macy & Co.* v. *Contra Costa County, supra,* at p. 362.) The business license tax comports with the equal protection standards if the distinction (classification) rests upon a rational basis. (*Park 'N Fly of San Francisco, Inc.* v. *City of South San Francisco* (1987) 188 Cal.App.3d 1201, 1213 [234 Cal.Rptr. 23].) *Business taxes are presumed to be rationally based if any conceivable state of facts exists to support them.* (*City of San Jose* v. *Donohue* (1975) 51 Cal.App.3d 40, 45 [123 Cal.Rptr. 804]; *City of Berkeley* v. *Oakland Raiders* (1983) 143 Cal.App.3d 636, 639 [192 Cal.Rptr. 66].) Finally, tax statutes are generally not subjected to close

scrutiny, and *distinctions therein can be justified on the basis of administrative convenience and promotion of legitimate state interests. (Cohan* v. *Alvord* (1984) 162 Cal.App.3d 176, 181-182 [208 Cal.Rptr. 421]; *Park 'N Fly of San Francisco, Inc.* v. *City of South San Francisco, supra,* 188 Cal.App.3d at p. 1213.)

■ In the case herein, the city council as a legislative body made findings that the municipal services provided by Berkeley (including health, police, fire protection, etc.) were injuriously affected by Proposition 13 and that the 1978 amendment of the Ordinance raising business license taxes was necessary to remedy the detrimental effect of Proposition 13.[3] Since the raise of business tax rates is constitutionally justified by the adoption of Proposition 13 alone (*Kehrlein* v. *City of Oakland* (1981) 116 Cal.App.3d 332, 335 [172 Cal.Rptr. 111]; *Northgate Partnership* v. *City of Sacramento* (1984) 155 Cal.App.3d 65, 71-73) [202 Cal.Rptr. 15], appellant's contention relative to the propriety of the tax classification in the Ordinance automatically fails.

### (2) *Distinction Between Hotel Operation and Other Businesses*

Appellant's next argument that there is no reasonable distinction between hotel operation and other businesses and, therefore, the imposition of a higher business license tax on hotels is impermissibly discriminatory, also finds no support in law. Contrary to appellant's assertion, there are many conceivable states of fact that support the differing classification of hotels and other retail businesses. The distinction between the two is justifiable because the hotels: are in a different trade and conduct their business in a different manner (*City of Los Angeles* v. *Crawshaw Mortgage & Inv. Co.* (1975) 51 Cal.App.3d 696, 703 [124 Cal.Rptr. 363]); attract more people than other service oriented businesses (i.e., restaurants) and thereby create a greater municipal burden (*Fox etc. Corp.* v. *City of Bakersfield, supra,* 36 Cal.2d at p. 144); pose more significant police and fire protection risks (*Associated Home Builders etc. Inc.* v. *City of Newark* (1971) 18 Cal.App.3d 107, 110 [95 Cal.Rptr. 648]); produce greater profits; and are treated differently from other types of businesses under the California health and safety

---

[3]The findings of the city council read in pertinent part as follows: "Section 3. *This Council finds* and determines *the public peace, health and safety are endangered by the detrimental fiscal impact of Proposition 13* (also known as the Jarvis-Gann Initiative) *and the* associated *inability of the City* of Berkeley *to provide adequate municipal public health,* recreation, *traffic control, police, fire* suppression and *prevention,* sanitary sewer, refuse collection services, *as well as other municipal services* normally provided and expected by citizens of the City of Berkeley. [¶] This *Council further finds* and determines *that* the municipal services detrimentally affected by Proposition 13 must continue unabated and *in order to continue such services it is necessary to provide for new sources of municipal revenue* as well as careful scrutiny and expenditure of remaining discretionary municipal revenue and that such new sources of revenue can be obtained through the immediate enactment of measures which are designed to remedy in part the detrimental effect of Proposition 13 . . . ." (Italics added.)

laws (Health & Saf. Code, §§ 17921, 13220-13223; *Erwin* v. *City of San Diego* (1952) 112 Cal.App.2d 213, 216 [246 P.2d 105]). These differing features amply justify a distinct classification of hotels and other types of businesses; as a consequence, the imposition of a higher business license tax on hotels must be upheld against an equal protection challenge. (*Ex Parte Lemon* (1904) 143 Cal. 558-559, 562 [77 P. 455]; *City of Palm Springs* v. *Burt* (1964) 224 Cal.App.2d 122, 125 [36 Cal.Rptr. 422].)

### (3) *Disparity in Tax Rates*

Appellant finally complains that even if the Ordinance passes constitutional muster in other respects, it must fail for excessive disparity of rates (e.g., appellant's hotel operation has been taxed six times higher than other businesses). Appellant's point again misses the mark.

It is well settled that neither due process nor equal protection imposes a rigid rule of equality in tax legislation. (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization, supra*, 30 Cal.App.3d at p. 1016.) Consistent therewith, it has been held that "occupations and businesses may be classified and subdivided for purposes of taxation, and it is within the discretion of the Legislature to exact different license taxes from different classes or subclasses of businesses, subject only to the limitations of the state and federal Constitutions in regard to equal protection of the laws. No constitutional rights are violated if the burden of the license tax falls equally upon all members of a class, though other classes have lighter burdens or are wholly exempt, provided that the classification is reasonable, based on substantial differences between the pursuits separately grouped, and is not arbitrary." (*Fox etc. Corp.* v. *City of Bakersfield, supra*, 36 Cal.2d at p. 142; *Associated Home Builders etc., Inc.* v. *City of Newark, supra*, 18 Cal.App.3d at pp. 109-110; *Gutknecht* v. *City of Sausalito* (1974) 43 Cal.App.3d 269, 276 [117 Cal.Rptr. 782]; *Times Mirror Co.* v. *City of Los Angeles* (1987) 192 Cal.App.3d 170, 183 [237 Cal.Rptr. 346].)

It follows that where, as here, the classification itself is reasonable, an ordinance will not be declared unconstitutional simply by reason of disparate tax rates. Thus, the courts repeatedly upheld rate increases and disparities which were much larger than those involved here. For example, in *Gutknecht* v. *City of Sausalito, supra*, 43 Cal.App.3d 269 the court upheld a tax rate increase which was 420 times higher than that applicable to other taxpayers. Similarly, in *Park 'N Fly of San Francisco, Inc.* v. *City of South San Francisco, supra*, 188 Cal.App.3d 1201, the court approved a 4 percent business license tax (as distinguished from the 1 percent here) by reasoning: "Undebatably, the challenged ordinance resulted in a dramatic increase in its

business license tax rates. But '[s]uch evidence alone of tax increases, even enormous increases, is not evidence of a lack of equal protection.' (*National Independent Business Alliance* v. *City of Beverly Hills* [1982] 128 Cal.App.3d [13,] 26-27 [180 Cal.Rptr. 59].) Nor can we find the ordinance discriminatory simply because appellant has thereby been subjected to a more onerous tax burden than other businesses. (*Westfield-Palos Verdes Co.* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 486, 495 [].)" (*Park 'N Fly of San Francisco, Inc.* v. *City of South San Francisco, supra,* at pp. 1213-1214.) ▮ Finally, in *City of Berkeley* v. *Oakland Raiders, supra,* 143 Cal.App.3d at page 640, where a 10 percent tax on gross receipts was upheld, the appellate court emphasized again that "there is no requirement that the amount of the tax be reasonable—merely that it not be confiscatory nor prohibitory."

▮ Appellant does not contend here that the tax rate at issue was so excessive as to amount to confiscation of his property. Short of such claim, mere disparity in the tax rate does not provide a legitimate reason to overturn the Ordinance on equal protection grounds.

### C. A Lower Tax Rate Is Not Justified for Incidental Hotel Activities Under Section 9.04.195, Subdivision D

Section 9.04.195, subdivision D, provides that "A *lessor may not combine returns, or include income derived from real property rental with income from other business activities* taxed under other provisions of this chapter. A separate license is required for each building or structure or lodging property subject to business license taxation as provided in this section." (Italics added.)

▮ Based upon the above cited section, appellant argues that even if the Ordinance is held valid, the judgment awarding respondent the sum of $84,501.63 is excessive and ought to be modified because certain revenue items (i.e., providing meeting rooms for seminars, conferences, etc.; sale of food and beverage; telephone charges; and revenues from miscellaneous services such as crib rental, fax, dry cleaning, laundry, shoeshine, etc.) did not derive from hotel rental and, therefore, should have been separated and taxed at a lower rate.[4] Once again, we are compelled to disagree.

A literal reading of section 9.04.195, subdivision D, indicates that income obtained from real property rental cannot be combined with other income for

---

[4]It is alleged that if the receipts from meeting rooms, sale of food and beverage, telephone charges and miscellaneous items are to be taxed at the lower rate set for retail businesses, appellants' total tax liability (including interest and penalties) cannot exceed $57,970.25.

taxation purposes only when such income derives from *other business activities*. ■■ However, case law firmly holds that when the activities conducted by the taxpayer constitute an integral part of his business, the receipts from such business activities cannot be separated and taxed at a different rate. The cases especially on point are *May Dept. Stores Co. v. City of Los Angeles* (1988) 204 Cal.App.3d 1368 [251 Cal.Rptr. 873]; *ITT Gilfillan, Inc. v. City of Los Angeles* (1977) 72 Cal.App.3d 421 [140 Cal.Rptr. 193]; and *National Schools v. City of Los Angeles* (1955) 135 Cal.App.2d 311 [287 P.2d 151].

In *May Dept. Stores* the court ruled that the store's gross receipts attributable to its retail sales could not be separated for local business license tax purposes from receipts gained from its credit and finance charges because both types of income derived from one overall business activity. The court noted that even though the Los Angeles tax ordinance permitted taxpayers to be separately taxed for different businesses, the taxpayers were not allowed to so separate an activity which was an integral part of a business function. (*May Dept. Stores Co. v. City of Los Angeles, supra,* 204 Cal.App.3d at p. 1374.)

In *ITT Gilfillan* the court again considered the separability of various sources of business receipts for local taxation purposes. In concluding that receipts from one business cannot be taxed separately, the court stated as follows: "True, a taxpayer that engages in more than one business is required to be separately licensed and is separately taxed on each business. (Los Angeles Business Tax Ord., § 21.06; *Universal Consolidated Oil Co. v. City of Los Angeles* (1962) 202 Cal.App.2d 771, 778-780 [].) That proposition, however, does not answer the key issue here involved. The question is not whether the city can properly tax at different rates separate businesses conducted by a taxpayer, but whether the taxpayers here were conducting more than one business. *An activity which is 'an integral part' of a business function cannot be carved out for separate taxation by the ordinance.* [Citation.] *The ordinance taxes by classifications of business and not by classification of various activities which may form part of a business.* [Citation.]" (*ITT Gilfillan, Inc. v. City of Los Angeles, supra,* 72 Cal.App.3d at p. 429, italics added.)

In *National Schools* the taxpayer was a correspondence trade school that operated a student store which, although open to the public, primarily served the students of the school. The taxpayer claimed that the receipts from its student store should be segregated and taxed not at the higher rate applicable to its tuition receipts, but rather at a lower rate applicable to other retail stores. The court rejected the school's argument and held that the store was

an integral part of the school and, thus, all its gross receipts were subject to the higher tax rate because the store: (1) was only a department of the school business; (2) was physically located within the school's principal place of business; (3) was not advertised in any manner to inform the general public of its existence; and (4) was patronized principally by its students. (*National Schools* v. *City of Los Angeles, supra*, 135 Cal.App.2d at pp. 326-327.)

Appellant's hotel operation falls squarely within these cases. The evidence introduced in the lower court convincingly demonstrates that the sale of food and beverage and the other services in dispute were provided only for the hotel guests; were parts of a first class comprehensive hotel operation; and constituted an integral part of appellant's hotel business. Since "an activity which is an 'integral part' of a business function cannot be carved out for separate taxation by the ordinance" (*ITT Gilfillan, Inc.* v. *City of Los Angeles, supra*, 72 Cal.App.3d at p. 429; *National Schools* v. *City of Los Angeles, supra* 132 Cal.App.2d at pp. 326-327), appellant's reliance on section 9.04.195, subdivision D, is misplaced and his request to tax certain gross receipts stemming from his hotel operation at a lower rate must be rejected.

The judgment is affirmed.

Perley, J., and Reardon, J., concurred.